UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VAUGHN COOPER, INDIVIDUALLY, ) <br> AND AS REPRESENTATIVE OF THE ) <br> ESTATE OF VANEISHA COOPER, ) <br> DECEASED, VIVIAN HARGROVE, ) <br> INDIVIDUALLY, AND AS NEXT FRIEND ) <br> OF J.A.C., A MINOR, YVETTE YVONNE ) <br> ROBERTS, INDIVIDUALLY, AND AS ) <br> REPRESENTATIVE OF THE ESTATE OF ) <br> RILEY WESLEY SHARBER, DECEASED, ) <br> EMMA JEAN NELSON AS NEXT FRIEND ) <br> OF E.Y.S., A MINOR, AND THERESA ) <br> COLLIER, INDIVIDUALLY, AND AS ) <br> REPRESENTATIVE OF THE ESTATE OF ) <br> BRIANA COLLETTE JACKSON, ) <br> DECEASED ) <br> ) <br> Plaintiffs ) <br> ) <br> v. ) <br> ) <br> BRIDGESTONE AMERICAS TIRE ) <br> OPERATIONS, LLC, and BRIDGESTONE ) <br> AMERICAS, INC. ) <br> ) <br> Defendants ) | Judge John W. Darrah <br><br> Case No. 1:10-cv-06152 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DETERMINE APPLICABLE LAW**

Defendants ask the Court to make a determination of the substantive law applicable to the claims in this case, which involves citizens and residents of multiple states and acts and conduct similarly arising in or affecting multiple states. Based on the facts and claims at issue, defendants submit that the substantive law applicable here ought to be the law of Indiana.

Though plaintiffs filed this case in the Northern District of Illinois, its connection to Illinois is tenuous. Instead, a choice of law analysis points to the application of Indiana law to the claims here. True conflicts of law exist, making such an analysis necessary. As the place of

injury, Indiana law is presumed to apply. Indiana is also the place where significant conduct giving rise to the injury—Vaneisha Cooper's operation of a damaged and poorly maintained tire and her failure to control the vehicle following the tire failure—occurred. None of the many states where the decedents were and the plaintiffs and defendants are domiciled have an overriding relationship to this case. There is no evidence of a relationship between the decedents and the defendants that would suggest an alternative state's law should apply. Ohio is the only plausible alternative to Indiana, but its relationship to the case cannot overcome the presumption afforded to the application of Indiana law. Therefore, the Court should apply Indiana law.

## BACKGROUND

On August 15, 2009, Vaneisha Cooper was driving a 1996 Lincoln Town Car northbound on I-65 in Jasper County in northwest Indiana, accompanied by Riley Sharber in the front passenger seat, Briana Collette Jackson in the rear left seat, and E.Y.S., a minor, in the rear right seat. (Dkt. 16, 1st Am. Compl. ¶¶ 4.1, 4.2.) The purpose and objective of this trip was to deliver Ms. Jackson and E.Y.S. to a bus station in Gary, Indiana. (Nelson Dep. 73–74, redacted in compliance with Fed. R. Civ. P. 5.2 and attached hereto as **Exhibit A**.) The plaintiffs allege that, while the vehicle was traveling, its right rear tire, a Bridgestone Insignia SL 215/70R15, failed. (Dkt. 16 at ¶¶ 4.3, 4.8.) Defendants contend that tire failure was caused by previous damage to the tire, and that it should not have been in service on the Cooper vehicle at the time of the accident. Ms. Cooper lost control of the vehicle, which veered across the median and into oncoming traffic, where it was struck by a semi-tractor/trailer. (*Id.* at ¶¶ 4.3.) Vaneisha Cooper and Riley Sharber were fatally injured and died at the scene, while Briana Jackson died nine days later. (*Id.* at ¶¶ 4.4, 4.5.) E.Y.S. survived, but sustained a head injury. (*Id.* at ¶ 4.6.)

According to the First Amended Complaint ("Complaint"), Vaneisha Cooper and Riley

Sharber were Ohio citizens at the time of their deaths, and Briana Collette Jackson was a citizen of Minnesota. (*Id.* at ¶¶ 2.3, 2.12, 2.21.) Plaintiffs' complaint also alleges that E.Y.S. is "an individual and a citizen of Texas" (*id.* at ¶ 2.18), though her mother, Emma Jean Nelson, has testified that she and E.Y.S. have lived in Minnesota for the past three years, which is supported by plaintiffs' interrogatory answers. (**Ex. A** at 6–7; Pls.' Resps. to Defs.' 1st Set of Interrogs. at 3, redacted in compliance with Fed. R. Civ. P. 5.2 and attached hereto as **Exhibit B**.) Defendant Bridgestone Americas Tire Operations, LLC ("BATO") is a Delaware limited liability company with its principal place of business in Tennessee, and defendant Bridgestone Americas, Inc. ("BSAM") is a Nevada corporation with its principal place of business also in Tennessee. (Dkt. 19, Answer and Affirmative Defenses of BATO and BSAM to Pls.' 1st Am. Compl. ¶¶ 3.1, 3.2.) The tire that allegedly failed was manufactured at BATO's Oklahoma City plant (Dkt. 16 at ¶ 4.8), but certain aspects of its design were developed in Akron, Ohio, while quality assurance, field monitoring, and manufacturing process direction were managed in Nashville, Tennessee.

The complaint identifies the plaintiffs themselves—the alleged representatives of the decedents' estates and the minor children—as citizens of Ohio, Minnesota, and Texas, though, as noted above, Emma Jean Nelson has lived in Minnesota for the past three years. (*Id.* at ¶¶ 2.2, 2.7, 2.10, 2.16, 2.19; **Ex. A** at 6–7.) None of the plaintiffs were involved in the accident, nor was Vaneisha Cooper's son, J.A.C.

The complaint does not specify the causes of action it brings, but plaintiffs appear to bring personal injury, wrongful death, and survival claims based on alleged negligence and strict product liability. The complaint also does not purport to seek recovery under a particular state's substantive law, but the allegations in the complaint and the facts developed in discovery support the application of Indiana substantive law.

**ARGUMENT**

**I.     THE SUBSTANTIVE LAW OF INDIANA SHOULD APPLY**

The applicable choice of law rules indicate that Indiana law should apply here. True conflicts exist between the laws of the states with any significant potential interest in this case. However, none of the interests of the other states are more significant than Indiana's, the place of injury. Therefore, Indiana law should apply.

**A.     True Conflicts of Law Exist**

In deciding this issue, the Illinois choice of law rules control. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) for the rule that "[w]hen a district court sits in diversity, it must apply the choice of law principles of the forum state to determine which state's substantive law governs the proceeding."). In cases where there is a conflict, Illinois applies the Restatement (Second) Conflict of Laws to determine which state's law will govern the rights and liabilities of the parties with respect to a particular issue. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 903 (Ill. 2007); *Ingersoll v. Klein*, 262 N.E.2d 593, 596 (Ill. 1970). The Restatement test requires a court to identify the jurisdiction with the "most significant relationship" to the occurrence and the parties. *Id*. But before reaching that analysis, the court first isolates the issues and defines the conflicts. *Townsend*, 879 N.E.2d at 898. A number of significant conflicts between the laws of Indiana and Ohio exist that impact both the types of claims plaintiffs may assert and the type and amount of damages they might recover.[1]

---

[1] As discussed in Section B below, Indiana and Ohio are the only two states with even arguable interests in applying their law to this case. For instance, while Illinois is the forum state, it has no other interest in this case since it is not the place of plaintiffs' injuries, any conduct contributing to their injuries, any party's residence or domicile, or the relationship between the parties, if any. Other states, like Minnesota, Texas, and Tennessee, have only minimal interests in the case, if any, as their only contacts are as states where a few of the parties are or were domiciled.

### 1. *Survival Claims*

Plaintiffs' complaint seeks what they describe as "Personal Injury Damages," "Wrongful Death Damages," and "Survival Damages." Though Ohio law would recognize their survival claims, Indiana law does not. Under Indiana law, claims for personal injury generally do not survive death, except for claims relating to personal injury that *did not* cause the decedent's death. Ind. Code §§ 34-9-3-1(a) (general rule that claims for "personal injuries to the deceased party" do not survive death), 34-9-3-4 (excepting claims for personal injuries other than those causing death from general rule); *Estate of Sears v. Griffin*, 771 N.E.2d 1136, 1138 (Ind. 2002). The Ohio survival statute has no such limitation on the survival of personal injury actions. Ohio Rev. Code § 2305.21 ([C]auses of action for . . . injuries to the person . . . shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto.")

This is more than technical conflict, since wrongful death and survival claims provide recovery for different alleged damages to compensate different interests. *Compare Thompson v. Wing*, 637 N.E.2d 917, 922 (Ohio 1994) (survival); *with Lawson v. Atwood*, 536 N.E.2d 1167, 1168 (Ohio 1989) (wrongful death); *see Am. Int'l Adjustment Co. v. Galvin*, 83 F.3d 1455, 1457 (7th Cir. 1996) (noting difference in recovery between survival and wrongful death claims under Indiana law).

### 2. *Negligence Claims*

In addition to wrongful death and survival statutes, Indiana and Ohio have both adopted comprehensive statutory schemes for product liability actions, though they conflict in important ways. Perhaps the biggest distinction is that Ohio law no longer recognizes a claim for common law product liability negligence, while such a claim appears viable under Indiana law.

The Ohio Product Liability Act ("OPLA") explicitly "abrogate[s] all common law

5

product liability claims or causes of action." Ohio Rev. Code § 2307.71(B). This clear legislative statement has been interpreted to mean that negligence claims arising after the enactment of section 2307.71(B) on August 1, 2007 are invalid and preempted by the OPLA. *Hale v. Enerco Group*, No. 1:10 CV 00867-DAP, 2011 WL 49545, *7 (N.D. Ohio Jan. 5, 2011) (holding that plaintiffs' negligence claims were preempted by the OPLA); *Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 922 (N.D. Ohio 2009) (interpreting section 2307.71(B) to preempt common law negligence claims); *Doty v. Fellhauer Elec., Inc.*, 888 N.E.2d 1138, 1142 (Ohio Ct. App. 2008) (finding that section 2307.71(B) was expressly intended to supersede an Ohio Supreme Court opinion that found that common law negligent claims survived the enactment of the OPLA); *see State ex. Rel. Ohio Gen. Assembly v. Brunner*, 873 N.E.2d 1232, 1232 (Ohio 2007) (holding that section 2307.71(B) became effective on August 1, 2007).

Though certain language of the Indiana Product Liability Act ("IPLA") indicates that it similarly preempts negligence claims, cases subsequent to its enactment and amendment suggest negligence remains a viable product liability cause of action. *Compare* Ind. Code § 34-20-1-1 ("This article governs all actions . . . regardless of the substantive legal theory or theories upon which the action is brought."), *with Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007) (evaluating negligence and strict liability claims under the ILPA), *and* Ind. Code § 34-20-3-1 (implying that plaintiffs may still bring a "product liability action in which the theory of liability is negligence or strict liability in tort"). A true conflict of law regarding the theories of liability open to the plaintiffs clearly exists.

### 3. *Conformity with the State of the Art or Industry Standards*

In addition to the theories of recovery available, the IPLA and the OPLA differ in the effect certain evidence has on plaintiffs' ability to recover. Under the IPLA, evidence that the

6

product conformed to the state of the art at the time it was designed or manufactured creates a rebuttable presumption that it was not defective and the defendant was not negligent. Ind. Code. § 34-20-5-1. The OPLA goes further to provide that such evidence is conclusive that the product was not defective. Ohio Rev. Code § 2307.75(F).

Evidence of compliance with applicable government standards creates a similar rebuttable presumption of no defect or negligence under the IPLA. Ind. Code § 34-20-5-1. Under the OPLA, such evidence is relevant, but "not conclusive evidence of non-liability," *Gable v. Village of Gates Mills*, 784 N.E.2d 739, 747–48 (Ohio App. Ct. 2003), *rev'd on other grounds by Gable v. Gates Mills*, 816 N.E.2d 1049 (Ohio 2004), though it does preclude the recovery of punitive damages. Ohio Rev. Code. § 2307.80(D).

Much evidence will be presented at the trial of this case regarding the state of the art and the applicable government standards at the time the tire was designed and manufactured. Defendants intend to present evidence that the tire conformed to both. Plaintiffs will, no doubt, attempt to dispute that. A true conflict exists here, as well.

    **4.**  *Damages Caps*

As components of their alleged damages, plaintiffs seek to recover various forms of "pain and mental anguish" and "loss of consortium, companionship and society . . . ." (*See* Dkt. 16 at ¶ 5.1(a)(1), (7), (b)(2), (3), (c)(1).) Ohio law identifies such damages as "noneconomic loss," and has capped their recovery at the greater of $250,000 or three times economic loss, to a maximum of $350,000 per plaintiff and $500,000 per occurrence. Ohio Rev. Code § 2315.18(B)(2). Indiana law does not have a similar cap on noneconomic damages. Though Ohio makes exceptions to the cap in the case of permanent functional injury or deformity and for wrongful death, *id.* at (B)(3), (H)(3), it does not appear that any Ohio case has addressed the application of

the cap to survival cases. Thus, there is the potential that Ohio's cap on noneconomic damages might apply to some of plaintiffs' claims here, creating another conflict.

Though it does not have these caps, Indiana has instituted caps and limitations on the damages recoverable for certain wrongful death claims that are not found in Ohio law. Under the Indiana Adult Wrongful Death Statute, damages for the death of an adult without dependents may not include damages for "grief" and damages for "loss of the adult person's love and companionship" are limited to an aggregate of $300,000 for all of the decedent's nondependent parents or children. Ind. Code. § 34-23-1-2. The evidence developed in this case suggests that these caps may apply to the claims of the Estate of Riley Sharber.

### 5. *Punitive Damages*

There is absolutely no evidentiary support for an award of punitive damages in this case. Nevertheless, plaintiffs do apparently intend to seek recovery for "exemplary," or punitive, damages. (Dkt. 16 at Prayer.) The limitations and restrictions on the recovery of punitive damages in place in either Indiana or Ohio would certainly apply. But Indiana and Ohio law provide different limits on the amount of punitive damages awards and the causes of action in which they are recoverable, creating another true conflict here.

By statute, Indiana has limited punitive damages to the greater of three times compensatory damages or $50,000. Ind. Code. § 34-51-3-4. Of that award, the plaintiff receives only 25%, and the remaining 75% is paid to the state treasury. Ind. Code § 34-51-3-6(c).

Ohio, on the other hand, limits punitive damages awards to two times compensatory damages. Ohio Rev. Code § 2315.21(D)(2). The Ohio Product Liability Act also prohibits punitive damages in product liability cases where the product complies with government standards, and establishes statutory factors to consider in determining punitive damages in a

product liability case.

Indiana and Ohio do not conflict in one aspect of punitive damages, in that they both allow punitive damages in survival actions, but not in wrongful death cases. But as noted above, Indiana law would not recognize plaintiffs' survival claims. *See supra* Section I.A.1. Though ultimately the evidence will show that none of the plaintiffs are entitled to punitive damages, under Indiana law, only E.Y.S. could even seek punitive damages. Under Ohio law, the other plaintiffs could seek punitive damages, as well, if they could prove Ohio survival claims.

Plaintiffs will not be able to establish a right to punitive damages by the "clear and convincing evidence" standard employed by both Indiana and Ohio. *See* Ind. Code § 34-51-3-2; Ohio Rev. Code §§ 2315.21(D)(4), 2308.80(A). But at this point, plaintiffs still appear to seek them. The difference between Indiana and Ohio law on punitive damages is one more significant conflict of law at play in this case.

### B. Indiana Law is Presumed to Apply

The Illinois Supreme Court has described the choice-of-law analysis to be performed when true conflicts exist, as in this case:

> In sum, a court begins a choice of law analysis in a tort case by ascertaining whether a specific presumptive rule, such as section 146 [of the Restatement] in a personal injury action, applies to the disputed conflict. Next, if the presumptive rule points to a specific jurisdiction, then the court must test this presumptive choice against the principles embodied in section 6 in light of the relevant contacts identified by the general tort principles in section 145. The presumptive choice controls unless overridden by the section 145 analysis.

*Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 909 (Ill. 2007).

"Under Illinois choice-of-law principles, for personal injury suits, there is a presumption that the law of the state where the injury occurred will govern." *Abbott v. Starlinger N. Am., Inc.*, No. 08 C 642, 2010 WL 2553655, at *3 (N.D.Ill. June 16, 2010) (Darrah, J.) (citing

9

*Townsend*, 879 N.E.2d at 903, which stresses the weight and importance of presumptive rules); Restatement (Second) of Conflict of Laws §§ 145, 175 (1971); *see also* Restatement § 175 cmt. a ("[T]he law applicable to wrongful death is selected by the same principles as control selection of the law applicable to personal injuries in general."). This presumption "may be overcome only by showing a *more* or *greater* significant relationship to another state." *Townsend*, 879 N.E.2d at 903. "[I]n the absence of unusual circumstances, the high scorer on the 'most significant relationship' test is—the place where the tort occurred." *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844 (1999). An analysis of the contacts listed in section 145 and the principles of section 6 of the Restatement in light of the facts of this case clearly supports this presumption, which plaintiffs cannot overcome.

    **C.**    **Indiana Has the Most Significant Contacts with the Case**

Section 145 of the Restatement lists the contacts that are considered in determining the state with the most significant relationship in a tort case:

1. the place where the injury occurred,
2. the place where the conduct causing the injury occurred,
3. the domicile, residence, nationality, place of incorporation and place of business of the parties, and
4. the place where the relationship, if any, between the parties is centered.

    **1.**    *The Place of Injury*

In addition to supplying the presumptive rule in personal injury actions, the place of injury is also the first contact to consider in the choice of law analysis. In this case, it is indisputable that Indiana was the place of plaintiffs' injury. Moreover, it was the place of the plaintiffs' injuries because it was the focus and goal of their trip. Vaneisha Cooper and Riley

10

Sharber were taking Briana Jackson and E.Y.S. to Gary, Indiana. (**Ex. A** at 73–74.) This contact points to the application of Indiana law to this case.

### 2. *Place Where the Conduct Causing the Injury Occurred*

This particular factor may slightly favor the application of Indiana law over Ohio law. As noted above, Vaneisha Cooper's conduct in driving a vehicle on Indiana roads with damaged tires and in mishandling the vehicle following the alleged tire failure certainly contributed to, if not entirely caused, the accident and plaintiffs' injuries. "A court's consideration of injury-causing conduct in a section 145 analysis includes all conduct from any source contributing to the injury," including the plaintiff's contributory negligence. *Townsend*, 879 N.E.2d at 906 (citing *Walter v. Maren Eng'g Corp.*, 617 N.E.2d 170 (Ill. App. Ct. 1993)). In this case, Vaneisha Cooper's conduct occurred in Indiana. Plaintiffs allege that the subject tire was "defectively designed, defectively manufactured, and defectively marketed." (Dkt. 16 at ¶ 4.20). Elements of that activity occurred in many states, including Oklahoma, Ohio, and Tennessee. Oklahoma has any no other contact with this case, and Tennessee's only other contact is as the domicile of two of the twelve parties and decedents. The relative strengths of Indiana's and Ohio's relationship to the case on this factor tip slightly toward Indiana or at least effectively balance each other out.

### 3. *The Domicile of the Parties*

Briana Collette Jackson lived in Minnesota at the time of the accident, and Vaneisha Cooper and Riley Sharber lived in Ohio. Plaintiffs' complaint alleges that E.Y.S. is "an individual and a citizen of Texas," but her mother has testified that she and E.Y.S. have lived in Minnesota for the past three years. The plaintiffs themselves are citizens of Ohio and Minnesota.

BATO is a Delaware limited liability company and BSAM is a Nevada corporation, but

11

they both have their principal places of business in Tennessee. So for purposes of this analysis, the defendants' most important contact is with Tennessee. Restatement (Second) of Conflict of Law § 145 cmt. e ("At least with respect to most issues, a corporation's principal place of business is a more important contact than the place of incorporation . . . .").

With the domiciles of the parties and decedents fairly scattered—Ohio, Texas, Minnesota, and Tennessee—this factor is a wash.

### 4. *The Place Where the Parties' Relationship is Centered*

There was no relationship between the decedents and the defendants. *See Schulze v. Ill. Highway Transp. Co.*, 423 N.E.2d 278, 280 (Ill. App. Ct. 1981) ("In many tort cases, the fourth contact—place of the parties' relationship—is inapplicable.") The plaintiffs have not produced, and the defendants have not uncovered to date, any purchase or service records for the subject tire. There is no evidence of how Vaneisha Cooper came into possession of the subject tire, how it came to be installed on the subject vehicle, or of any dealings between the plaintiffs or decedents and the defendants. Since there was no relationship between the parties, it cannot be said to be centered anywhere. The fourth factor is largely inapplicable.

### C. **The Application of Indiana Law Furthers Public Policy**

From the above analysis, Indiana, as the place of injury and the place of conduct causing injury, has the most significant relationship to this case. At the very least, the presumption that Indiana law would apply has not been overridden. Consideration of the contacts in section 145 is not merely an exercise in counting contacts; rather, the contacts are weighed "according to their relative importance with respect to a particular issue." Restatement (Second) Conflict of Laws § 145; *see id at* § 6 (identifying general principles to weigh). Some of the policy considerations to be weighed are not applicable in tort cases or are only minimally implicated. *Townsend v. Sears,*

12

*Roebuck & Co.*, 879 N.E.2d 893, 906-07 (Ill. 2007). In this case in particular, the interests of the forum state, Illinois, are so minimal as to render its policies largely irrelevant. Instead, the policies of the only possible interested states—Indiana and Ohio—and the policies underlying the field of law are the most relevant here.

Illinois choice of law rules recognize that certain "policy arguments" have no place in this stage of the analysis. "Tort rules which limit liability are entitled to the same consideration when determining choice of law issues as rules that impose liability." *Id.* at 907 (citation and quotations omitted); *see* Restatement (Second) Conflict of Laws § 145 cmt. c ("A rule which exempts the actor from liability for harmful conduct is entitled to the same consideration in the choice of law process as is a rule which imposes liability."). The Illinois Supreme Court in *Townsend* made clear that arguments labeling certain laws as "pro-plaintiff" and "pro-defendant" should be rejected. *Townsend*, 879 N.E.2d at 907 ("We trust that characterizations such as 'pro-consumer' or 'pro-business' will not often appear in future choice of law cases."). Similarly, the lack or limitation of a remedy under a state's law is not a reason to distort the choice of law analysis in favor of plaintiffs. As the court concluded in *Manh Hung Nguyen v. Johnson Machine & Press Corp.*, 433 N.E.2d 1104, 1111 (Ill. App. Ct. 1982), liability should not be imposed merely because a defendant can afford it.

The conflicts at issue in this case relate to the causes of action and theories of liability available to the plaintiffs, the available methods of proving or disproving liability, and the type and amount of damages that the plaintiffs may recover. These conflicts are all creatures of legislation, the purposes of which are readily identifiable.

The apparent policy behind Indiana's survival and wrongful death statutes is to create only one type of claim for injuries causing death: the wrongful death action. *See Am. Int'l*

13

*Adjustment Co. v. Galvin*, 83 F.3d 1455, 1457 (7th Cir. 1996) (noting that, under Indiana law, defendant could be liable under either survival or wrongful death, but not both). Similarly, the policy behind the Indiana Product Liability Act and the Ohio Product Liability Act, including Ohio's abrogation of common law negligence in product liability cases, is to create a comprehensive statutory scheme to cover all such cases. *See* Ind. Code § 34-20-1-1 (stating that the IPLA governs all product liability actions); Ohio Code Rev. § 2307.72(A), (B) (stating that all recovery for "a product liability claim" is subject to the OPLA); *Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 976 (Ind. 2002) ("[I]t was 'clear the legislature intended that the [IPLA] govern all product liability actions . . . .'"). This policy would best be furthered by the application of the complete statutory scheme of one of the states, particularly the state with the most significant relationship to this case.

The interest of Ohio in seeing its law applied to this case is relatively low here, since only one element of the defendants' allegedly wrongful conduct occurred there and only some of the parties are or were residents of Ohio.

Indiana, as the state whose law is presumed to apply, has an equal, if not stronger, interest in maintaining the safety of its highways through the regulation of vehicles and products used on its roads, specifically damaged tires that represent a hazard to the users of its highways. Similarly, Indiana has a strong interest in governing conduct like that of the driver and vehicle owner here in maintaining tires used on Indiana's roads and in controlling and handling the vehicle and contributing to the accident in this case. As Judge Posner noted in *Spinozzi v. ITT Sheraton Corp.*, the place where the tort occurred "is the place that has the greatest interest in a striking a balance among safety, cost, and other factor pertinent to the design and administration of a system of tort law." *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 845 (1999); *see*

14

Restatement (Second) Conflicts of Law § 145, cmt. d ("[A] state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there."). Thus, general choice of law principles suggests that Indiana law applies here.

## CONCLUSION

As discussed above, Indiana has the most significant contacts to the case and the most interest in seeing its law apply here. The only other state with any substantial connection to this case is Ohio. Under the applicable choice of law rules, Indiana law should apply to the claims in this case, or, in the alternative, Ohio law should apply.

          Defendants

          BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC and BRIDGESTONE AMERICAS, INC.

          By:     */s/ Bradley Bulthuis*
                   One of Their Attorneys

Colin Smith
Thomas R. Woodrow
Robert E. Tonn
Bradley Bulthuis
HOLLAND & KNIGHT LLP
131 S. Dearborn St., 30th Fl.
Chicago, IL 60603
(312) 263-3600
(312) 578-6666 (fax)

## **CERTIFICATE OF SERVICE**

       I, the undersigned attorney, certify that foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR DETERMINATION OF APPLICABLE LAW** was electronically filed and service was accomplished pursuant to the ECF for filing users on this the 1st day of September, 2011.

                                         By: */s/ Bradley Bulthuis*